**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| KRISTEN Y. MASON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-209-PRC |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kristen Y. Mason on May 9, 2017, and a Plaintiff's Opening Brief [DE 8], filed by Plaintiff on August 25, 2017. Plaintiff requests that the December 11, 2015 decision of the Administrative Law Judge denying her claim for disability insurance benefits be reversed and remanded for an award of benefits or for further proceedings. On November 3, 2017, the Commissioner filed a response, and Plaintiff filed a reply on November 17, 2017. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On October 29, 2012, Plaintiff filed an initial application for disability insurance benefits, alleging disability beginning October 31, 2011. (AR 79).[1] On behalf of the Social Security Administration, the Indiana Disability Determination Bureau approved Plaintiff's application on June 3, 2013, finding that she was disabled for a closed period from October 31, 2011, to March 5,

---

[1] The October 2012 application is referenced in the Disability Determination Explanation; however, it is not in the administrative record. (AR 36-41, 79).

2013. Her claim was approved for the closed period because she returned to work at the substantial gainful activity level on March 5, 2013. (AR 87).

On November 14, 2013, Plaintiff filed a new application for disability benefits and alleged an onset date of September 30, 2013. (AR 89). Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing and, in a pre-hearing brief, requested the reopening of her prior application. (AR 253-58). On August 13, 2015, Administrative Law Judge William Pierson ("ALJ") held a hearing by video conference. In attendance at the hearing were Plaintiff, Plaintiff's attorney, and an impartial vocational expert. On December 11, 2015, the ALJ issued a written decision that addressed the period of both applications and determined that Plaintiff had not been under a disability from October 31, 2011, through the date of the December 11, 2015 decision, revising the prior decision that had established disability for the closed period. The ALJ made the following findings:

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.      The claimant engaged in substantial gainful activity during the following periods: March 5, 2013, to October 1, 2013.

3.      However, there have been continuous 12-month periods during which the claimant did not engage in substantial gainful activity. The remaining findings address the periods the claimant did not engage in substantial gainful activity.

4.      The claimant has the following severe impairments: degenerative disc disease with a history of diagnosis of lumbar radiculitis; prior pain clinic diagnosis of sacroiliitis, spondylosis/arthropathy/radiculopathy/lumbago; more recent diagnoses of neuropathy/vitamin deficiencies; much more recent diagnoses of mild osteoarthritis of the hips, mild degenerative changes in the right ankle, and a calcaneal spur in the left ankle; and, obesity.

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a).

7.     The claimant is unable to perform any past relevant work.

8.     The claimant was born [in 1968] and was 43 years old, which is defined as a younger individual age 18-44, on the originally alleged disability onset date of October 31, 2011. She is currently 47 years old, which is defined as a younger individual 45-49 years old.

9.     The claimant has at least a high school education and is able to communicate in English.

10.    Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.

11.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

12.    The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2011, through the date of this decision.

(AR 16-22).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff filed this civil action pursuant to 42 U.S.C. § 405(g) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**ANALYSIS**

In the instant appeal, Plaintiff makes two arguments for reversal of the ALJ's decision, contending that the ALJ erred in evaluating Dr. Ruiz's April 20, 2013 medical opinion and in finding that Plaintiff can perform the full-range of sedentary work. The Court considers each in turn.

## A. Dr. Ruiz's 2013 Medical Opinion

Dr. Ruiz is the state agency Medical Consultant at the initial review level who reviewed Plaintiff's 2012 application for disability benefits, including her medical records and Dr. Bacchus' April 15, 2013 consultative examination. On April 20, 2013, Dr. Ruiz provided a Residual Functional Capacity assessment that Plaintiff was limited to less than sedentary work, which the State agency relied on in the Disability Determination Explanation that resolved Plaintiff's 2012 application. (AR 82-87). Plaintiff argues that the ALJ erred in evaluating the April 20, 2013 opinion of Dr. Ruiz by ignoring a purported finding by Dr. Ruiz that Plaintiff was unable to work a full 40-hour workweek and by finding, in contrast with Dr. Ruiz, that the evidence did not support manipulative limitations. For the following reasons, the ALJ did not err in considering Dr. Ruiz's opinion, and substantial evidence supports the ALJ's analysis of Plaintiff's manipulative limitations.

*1.    Ability to Sustain a 40-Hour Workweek*

Plaintiff argues that the ALJ failed to consider Dr. Ruiz's opinion that Plaintiff was unable to sustain a 40-hour workweek. However, Dr. Ruiz did not opine that Plaintiff was unable to sustain a 40-hour workweek, and there was no error. By way of background, the Court first sets out the contents of the Disability Determination Explanation that was issued on Plaintiff's 2012 application for benefits and then addresses Plaintiff's argument.

a.      The Disability Determination Explanation

The nine-page form granting Plaintiff benefits for the closed period of October 31, 2011, to March 5, 2013, is titled "Disability Determination Explanation." (AR 79). The first section of the form contains "Claimant Information." *Id.* The next session is titled "Technical Issues." *Id*. at 79-80. This is followed by a section titled "Evidence of Record," which lists the consultative examination of Dr. Bacchus, medical records from Parkview First Care, medical records from Dr. Daniel C. Roth, and medical records from Health Now. *Id*. at p. 80-81. The section further indicates that records had been requested from "Peak Performance Ortho & Sports Physi." *Id*. at 81. The next section is "Claim Communications," which states that no claim communications have been created. The following section is titled "Consultative Examination(s) (CE)" and indicates that a consultative examination was required and obtained. *Id*. at 81. Under the section "Findings of Fact and Analysis of Evidence," the "analysis" is "spine radiculopathy." *Id*. at 82. The section "Medically Determinable Impairments and Severity (MDI)" lists the impairment diagnoses of "spine disorders" and "obesity" and that Listing 1.04 for "Spine Disorders" was considered. *Id*. at 82. The next section is titled "Assessment of Policy Issues" and indicates that Plaintiff's medically determinable impairments can be expected to produced her pain or other symptoms and that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms are substantiated by the objective medical evidence alone. *Id*.

Important to the instant analysis, the next section is the "Residual Functional Capacity," which is signed by Dr. Ruiz at the conclusion of the section. (AR 82-85). Therein, Dr. Ruiz rates Plaintiff's exertional limitations at the sedentary level (occasional lifting/carrying 10 pounds, frequently lifting/carrying 10 pounds, standing/walking 2 hours, sitting 6 hours in an 8-hour

workday, and unlimited pushing and pulling with hands and feet) with postural limitations of occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; of never climbing ladders/ropes/scaffolds; and of avoiding concentrated exposure to wetness and vibration and moderate exposure to hazards. *Id*. at 82-83. When asked on the form to explain the postural limitations and how and why the evidence supports the conclusions, Dr. Ruiz references his "RFC - Additional Explanation," which the Court summarizes below. Dr. Ruiz further imposes manipulative limitations of limited handling and fingering, but with unlimited reaching in any direction, including overhead, and with unlimited feeling. *Id*. at 84. The form then asks for an explanation of the manipulative limitations and how and why the evidence supports the ratings, asking the doctor to cite specific facts upon which the conclusions are based and to identify the extent to which the function can be performed; Dr. Ruiz writes: "Restrict to occasional." *Id*. Finally, Dr. Ruiz answers "yes" to "environmental limitations." *Id*.

Under "RFC - Additional Explanation," Dr. Ruiz notes that Plaintiff has spinal pain with radiculopathy. *Id*. at 85. In support, he writes: "8/25/2012 MRI of C-spine notes disc protrusion. 11/25/12 Lspine MRI notes multilevel spondylosis. 12/12 chronic back pain, cannot [*sic*] longer than 5 minutes, has TENS unit, tenderness in Lspine, no AD, +SLR, 11/5/12 chronic pain; 8/12 Lspine tenderness, radiculopathy/spondylosis." *Id*. at 85. Dr. Ruiz then discusses Dr. Bacchus' April 15, 2013 consultative examination, noting that Dr. Bacchus found morbid obesity at 287 pounds and 62", mildly antalgic gait, +SLR, 4/5 strength in extremities and 3/5 grip in right and 4/5 grip in left, and slow dexterity with "FMM" but preserved. *Id*. For the cervical spine, flexion was 40/50, extension was 40/60, rotation was 50/80 on the right and 60/80 on the left, decreased shoulder range

9

of motion, knee flexion of 100/150 on the right and 90/150 on the left, hip flexion of 80/100 on the right, and 70/100 on the left, and extension of ankle at 15/30 on the right. *Id*.

Dr. Ruiz then concluded: "These findings complete the medical portion of the disability determination." *Id*. Immediately following is the subheading "MC/PC or SDM Signature," which is followed by Dr. Ruiz' electronic signature dated April 20, 2013. *Id*.

The next section of the form is titled "Assessment of Policy Issues - Continued," which provides that there was no opinion evidence. *Id*.

Also important to the instant analysis, the subsequent section is titled "Assessment of Vocational Factors," which is immediately followed by a subheading of "Assessment of the Individual's Ability to Perform Past Relevant Work." Under these headings are listed four former job titles held by Plaintiff as well as the start and end date for each. For each of the four jobs, after the prompt "Reason for no DOT Match" is written "All jobs in the DOT are based on the ability to sustain the defined exertional level for a 40-hour workweek. The RFC has rendered the individual unable to sustain a 40-hour workweek." (ECF 4, pp. 85-86). Below that, the finding is that Plaintiff has past relevant work but that she does not have the RFC to perform past relevant work. *Id*. at 86. The next subheading is "Application of Medical-Vocational Rules: Other work." *Id*. The conclusion is that Plaintiff has a maximum sustained work capability of less than the full range of sedentary work and that the rule was used as a frame work, with a citation to "201.14 - Cl App Ad Age HS No Dir Ent Skilled-Semi No Trans." *Id*.

The next section is titled "Determination" and contains the determination of "Disabled." *Id*. There is a final section titled "Signatures" with "ADULT MC/PC or SDM Signature" listed as "M.

Ruiz, M.D. (12) 04/20/2013" below which is listed "Disability Adjudicator/Examiner Signature" followed by "Shawn Baker 06/03/2013." *Id*. at 87.

    b.    Analysis

Plaintiff argues that the ALJ erred by failing to recognize and evaluate "Dr. Ruiz's opinion that Ms. Mason was unable to sustain a 40-hour workweek," which Plaintiff argues is an error of law requiring reversal. (ECF 8, p. 16). Plaintiff's argument is unfounded and misreads the Disability Determination Explanation and Dr. Ruiz's RFC determination. As set forth above, Dr. Ruiz's RFC determination is contained in the section titled "Residual Functional Capacity," and his signature as the "MC/PC or SDM" is placed at the end of that "Residual Functional Capacity" section. (AR 85). Immediately preceding his signature is the statement, "These findings complete the medical portion of the disability determination." *Id*. Nowhere in the "Residual Functional Capacity" section does Dr. Ruiz opine that Plaintiff cannot sustain a 40-hour workweek. It is not until a subsequent section, titled "Assessment of Vocational Factors," that the determination is made that Plaintiff's RFC has rendered her unable to sustain the defined exertional level of her past relevant work for a 40-hour workweek. (AR 85). This is not a medical finding or opinion in the RFC by Dr. Ruiz, the Medical Consultant, but rather an administrative determination by Shawn Baker, the Disability Examiner. (AR 87).

The Social Security Administration Program Operations Manuel System ("POMS") explains that the role of the Disability Examiner includes the evaluation of the vocational aspects of the case, including to "[d]etermine whether a claimant can perform past relevant work given his or her RFC at step 4 of the sequential evaluation process" and to "[d]etermine whether a claimant can adjust to other work given the applicant's RFC, age, education, and work experience at step 5 of the

sequential evaluation process." DI 24501.001, "The Disability Determination Services (DDS) Disability Examiner (DE), Medical Consultant (MC), and Psychological Consultant (PC) Team, and the Role of the Medical Advisor (MA)," § B.1, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited July 30, 2018). The statement in the "Assessment of Vocational Factors" regarding Plaintiff's ability to sustain a 40-hour week in relation to the exertional level of her past relevant work and her current RFC for less than a full range of sedentary work is part of the Disability Examiner's function.

In contrast, the role of a Medical Consultant, such as Dr. Ruiz, is to evaluate the sufficiency of the evidence and need for further testing; to act as a liaison between the Disability Determination Services and the medical community; to determine the severity of impairments at step 2 of the sequential evaluation process and whether the claimant meets or equals a listing at step 3 of the sequential evaluation process; to assess and determine RFC in adult disability determinations; to participate in other specific medical determinations (such as whether drug addiction or alcoholism is material to the determination), as appropriate; and to review determinations to ensure their integrity. *Id*. at § B.3. The POMS further provides that the "signature responsibilities" of the Medical Consultant are to sign assessments and determinations and to indicate that his signature completes the medical portion of the disability determination. *Id*. at § B.4.

In her brief, Plaintiff cites POMS DI 24510.005, which is titled "General Guidelines for Residual Functional Capacity (RFC) Assessment," to argue that a Medical Consultant must consider a claimant's stamina and endurance in evaluating RFC. *See* DI 24510.005, "General Guidelines for Residual Functional Capacity (RFC) Assessment," https://secure.ssa.gov/poms.nsf/lnx/0424510005 (last visited July 30, 2018). Plaintiff is correct. Section C.2 of DI 24510.005 is titled "Stamina and

Endurance" and provides that the Medical Consultant should evaluate and base his conclusions on "all facts of the case" including, but not limited to, the history, the objective medical test results and physical findings, the characteristic effects of the disease or disorder, the effects of treatment, reports of daily activities, lay evidence, recorded observation, the effects of symptoms, and precipitating and aggravating factors for fatigue." *Id.* at § C.2.a. The section further directs the Medical Consultant to "[c]onsider an 8-hour workday and a 5 day work week . . . in evaluating the ability to sustain work-related functions." *Id.* at § C.2.b. This is the standard that guided Dr. Ruiz's RFC determination, and there is no indication in his RFC determination that Dr. Ruiz did not evaluate Plaintiff's impairments and base his conclusions on these factors. Importantly, as noted above, Dr. Ruiz did not conclude in the RFC that Plaintiff could not sustain an 8-hour workday for a 5-day workweek.

Plaintiff also cites DI 24510.057, which is titled "Sustainability and the Residual Functional Capacity (RFC) Assessment," to argue that a claimant's RFC must reflect activities that the claimant can sustain for an 8-hour workday and a 5-day work week and that the "inability to sustain a 40-hour workweek is an RFC finding." (ECF 8, p. 16-17) (quoting DI 24510.057); *see* DI 24510.057, "Sustainability and the Residual Functional Capacity (RFC) Assessment," https://secure.ssa.gov/poms.nsf/lnx/0424510057 (last visited July 30, 2018). First, Plaintiff is correct that DI 24510.057 provides that the RFC is defined as "the individual's maximum remaining ability to do sustained work activities [i]n an ordinary work setting,[o]n a regular and continuing basis, and [f]or 8 hours a day, 5 days a week, or an equivalent work schedule." DI 24510.057, § A, https://secure.ssa.gov/poms.nsf/lnx/0424510057. Yet, Plaintiff fails to note that DI 24510.057 § A goes on to require: "However, if a claimant is unable to sustain a 40-hour workweek because of a

severe medically determinable impairment (MDI), the adjudicator or medical consultant *must discuss sustainability in the RFC*." *Id*. (emphasis added). Moreover, DI 24510.057 § B.4 lists the "RFC narrative requirements" and provides that "[i]n all cases involving inability to sustain a 40-hour workweek, the narrative must" include several categories of listed information, including "a detailed explanation of what limitation(s) the claimant has that render him or her unable to sustain a 40-hour workweek." *Id*. at § B.4. In the instant case, Dr. Ruiz *did not* discuss sustainability in the RFC or its narrative. There is no finding by Dr. Ruiz in the RFC that Plaintiff was unable to sustain a 40-hour workweek because of her severe medically determinable impairments. If Dr. Ruiz had made such a finding, he would have been required to include it in the RFC determination.

Second, Plaintiff is correct that DI 24510.057 includes the language she quotes: "Inability to sustain a 40-hour workweek is an RFC finding." *Id*. at § B.5. However, Plaintiff takes the quotation out of context. That language is contained in Section B.5, which addresses how the adjudicator should determine disability when the claimant has part-time past relevant work as well as an RFC that reflects an inability to sustain a 40-hour workweek. *Id*. at § B.5. The quoted language is under subheading titled "Reminder," reminding the adjudicator that the inability to sustain a 40-hour workweek is an RFC finding and must be used to complete the sequential evaluation process. *Id*. Again, Dr. Ruiz did not make a finding in his medical determination in the RFC that Plaintiff was unable to sustain a 40-hour workweek.

Thus, the ALJ did not err by not discussing the reference in the vocational assessment to the ability to sustain a 40-hour workweek related to the ability to sustain the defined exertional level of Plaintiff's past relevant work in light of the RFC for less than sedentary work.

2.      *Manipulative Limitations*

Dr. Ruiz's April 20, 2013 RFC determination for a reduced range of sedentary work included manipulative limitations of occasional handling and fingering. (AR 84). (Dr. Ruiz opined that Plaintiff had unlimited reaching and feeling. *Id*.) In his December 11, 2015 decision, the ALJ considered Dr. Ruiz's RFC determination in light of the underlying evidence and found that the limitation to a reduced range of sedentary work, and particularly the manipulative limitations, "was not supported by the record as a whole at the time it was made." (AR 27). The ALJ then discussed and explained in detail why the evidence of record did not support occasional handling and fingering. Plaintiff argues that the ALJ's rejection of the manipulative limitations imposed by Dr. Ruiz was in error.

a.      The ALJ's discussion of record evidence regarding manipulative limitations

The ALJ thoroughly and accurately discussed the evidence of record, unchallenged by Plaintiff. First, the ALJ noted that, in finding that Plaintiff had manipulative limitations during the closed period from October 2011 to March 2013, Dr. Ruiz relied on the April 15, 2013 examination findings of consultative examiner Dr. Bacchus. The ALJ found that Dr. Ruiz's reliance on an examination that occurred after Plaintiff returned to work in order to define Plaintiff's capacity during an earlier period of disability "appears less than a sound analysis." (AR 28). The ALJ further noted that Dr. Bacchus himself did not assign any manipulative limitation based on Plaintiff's hands and upper extremities in his medical source statement. (AR 28 (citing AR 312)). Rather, the ALJ noted that Dr. Bacchus opined that Plaintiff retained the capacity for "light duties" with occasional bending, squatting, and overhead reaching and that Plaintiff was limited regarding "prolonged standing and walking, repetitive climbing or walking on uneven ground." *Id*. The ALJ explicitly

found that the limitations in Dr. Bacchus' statement would not significantly erode the sedentary occupational base, citing SSR 96-9p. (AR 28). Plaintiff does not dispute this finding.

The ALJ then stated his intention to show that the record supports a capacity for at least sedentary work at all relevant times and walked through the medical evidence, demonstrating that Dr. Ruiz's assessment of manipulative limitations was not supported by the record. The ALJ noted that Dr. Ruiz appears to have given great weight not to Dr. Bacchus' medical source statement but rather to Dr. Bacchus' examination findings of decreased grip strength and overall strength. *Id*. The ALJ recognized that Dr. Bacchus noted that muscle strength and tone was presented as 4/5 in all extremities and that grip was portrayed as decreased to 3-4/5 in the right (dominant) hand and to 4/5 in the left. *Id*. The ALJ also recognized that, although Dr. Bacchus noted that fine and gross dexterity was "slow," it was preserved in terms of buttoning, zipping, and picking up small objects. *Id*. The ALJ also noted Dr. Bacchus's finding that sensory examination was intact. *Id*. The ALJ commented that "again, no manipulative restrictions were assigned in the medical source statement." *Id*. (citing AR 311-12).

The ALJ then explained that, not only did Dr. Bacchus not find any significant deficits in manipulation, despite the examination findings of decreased grip and slowed dexterity, the examination findings had not otherwise been made by treating physicians or their staff. *Id*. Instead, the ALJ explained that, prior to Dr. Bacchus' April 15, 2013 consultative examination, Plaintiff's complaints had been primarily related to low back and right thigh pain and not related to upper extremity symptoms or deficits. *Id*. The ALJ then gave specific examples, first noting the December 7, 2012 examination by Plaintiff's orthopedic specialist, Dr. Hoffman, for low back pain with L5 radiculopathy, which the ALJ noted affects the lower, not upper extremities. *Id*. The ALJ noted that

examination showed tenderness to palpation in the lumbar spinal muscles but that Plaintiff was neurovascularly intact, straight leg raising was negative, hip range of motion was full, sensation was intact, and strength was 5/5. *Id*.

Next, the ALJ cited the January 8, 2013 visit for pain management with Dr. S. Barr following findings on a lumbar MRI, when Plaintiff's gait was antalgic yet sensory and motor function remained normal, straight leg raising remained negative, and strength remained full at 5/5. *Id*. (citing AR 315-340). The Court notes that, at that visit, there is no record of Plaintiff mentioning pain or numbness in her hands or arms. (AR 320-22). The ALJ further noted that, following medial branch blocks on January 22, 2013, Plaintiff reported that she was doing "much better" on January 28, 2013, with a pain level of only 2 out of 10 on a scale of 1 to 10 in contrast with pain at an 8-9 out of 10 earlier that month. (AR 28). The ALJ also noted that Plaintiff's gait had returned to normal and that she reported that she was able to vacuum and sweep with minimal pain symptoms. *Id*. The ALJ noted that, after ablation treatments in February and March 2013, on April 8, 2013, Plaintiff reported "significant" improvement in her back pain that was then at a level of 1 or 2 out of 10, her gait was normal, and no abnormal examination findings were recorded. (AR 28-29). The ALJ noted that this April 8, 2013 report to her treating physician was less than a week before Dr. Bacchus' consultative examination. (AR 28).

Thus, the ALJ reasoned that "[t]he above orthopedic treatment notes do not reflect ongoing complaints of, and objective medical findings related to, significant deficits in upper extremity/hand/finger strength, motion, dexterity and coordination due to pain, loss of sensation, less of strength, or otherwise. Instead, such notes generally reflect lumbar and lower extremity complaints with improvement." (AR 29). The ALJ then considered other medical evidence prior to

17

March 5, 2013. The ALJ reviewed physical therapy treatment in 2011, due to a "flare" of back pain, that ended prior to the alleged onset date, that returned her to her condition prior to the flare (although not all goals were met at the time of discharge), and coincided with continued full-time work. (AR 29 (citing AR 286-95)). The ALJ discussed pain management at Centers for Pain Relief prior to March 2013, which the ALJ noted was primarily due to low back pain and right leg symptoms. *Id*. The ALJ noted that, although Plaintiff reported pain during visits, her strength remained intact through the final recorded visit on December 3, 2012, and her gait remained normal. *Id*.

Finally, the ALJ discussed what he described as the evidence of record related to hand or upper extremity complaints. *Id*. The ALJ noted that Plaintiff reported muscle cramping in her hands on June 4, 2012, but she indicated that the cramping was due to her medications. *Id*. The ALJ noted that the next hand complaints did not occur until September 10, 2012, when Plaintiff reported numbness in her fingers and arms; however, the ALJ recognized that this occurred only "on occasion." *Id*. The ALJ also discussed the EMG ordered on October 8, 2012, commenting that "it is very significant that the results of testing performed on November 5, 2012, actually confirmed normal nerve conduction." *Id*. The ALJ noted that the results did not reveal neuropathy, carpal or cubital tunnel syndrome, or radiculopathy or plexopathy. *Id*. The ALJ noted that, on the day of the EMG, a physical examination by her treating physician showed intact sensation, 5/5 strength in all muscle groups, sensation intact to light touch and pinprick, equal and symmetrical reflexes in the upper and lower extremities, normal finger to nose coordination, and normal and stable gait without device. *Id*. The ALJ commented that examination findings remained unchanged during the final visit at Centers for Pain Relief on December 3, 2012. The ALJ explained that, although Plaintiff reported

difficulty with walking (limited to walking five minutes) and although Plaintiff reported to her treating physician that she sat down when vacuuming, examination showed normal gait, 5/5 strength, and intact sensation. *Id*.

From this evidence, the ALJ concluded that "the alleged levels of limitation appear not well supported by the objective findings." *Id*. The ALJ noted that the objective medical findings from November and December 2012 also failed to bolster allegations of limited hand strength, dexterity, or use. *Id*. The ALJ brought the discussion full circle, noting that the visit with Dr. Hoffman on December 7, 2012, discussed earlier, also showed that sensation and strength remained intact. *Id*. Finally, the ALJ noted that it is significant that no upper extremity complaints were recorded and none were made during subsequent pain management treatment with Dr. Barr through March 5, 2013. *Id*.

The ALJ concluded that the treatment notes "fail to document ongoing and long term deficits in upper extremity strength, motion, dexterity and coordination," "reflect lumbar and lower extremity complaints with improvement," and reflect few hand complaints that occurred only "on occasion." *Id*. The ALJ noted that these complaints were accompanied by a normal nerve conduction study in November 2012, no upper extremity complaints in December 2012, and the absence of supportive objective medical findings during that time period. *Id*.

The ALJ then returned to Dr. Bacchus' April 15, 2013 consultative examination, noting that, in contrast with Dr. Bacchus' examination, no examination performed by a treating source had confirmed diminished strength, diminished grip, or slowed dexterity either on a long term basis or as portrayed during Dr. Bacchus' examination. (AR 30). The ALJ explicitly afforded greater weight to the objective medical findings within the ongoing treatment notes as well as to the diagnostic

testing than to Plaintiff's presentation at the consultative examination. *Id.* The ALJ concluded that the treatment records prior to Dr. Ruiz's April 20, 2013 RFC determination are sufficient to limit Plaintiff to sedentary work due to low back and leg pain and due to the effects of obesity. *Id.* However, the ALJ found that the manipulative limitations portrayed at the consultative examination and found by Dr. Ruiz in the RFC were not supported by the treatment notes, the nerve conduction study, and Dr. Bacchus' noted findings of limitation of function. *Id.*

Based on this analysis, the ALJ gave little weight to Dr. Ruiz's findings and found that the June 3, 2013 disability determination for the closed period of October 31, 2011, to March 5, 2013, was in error and not well supported. *Id.* The ALJ found that disability is not established based on the October 29, 2012 application because the record fails to support impairment or upper extremity limitations that precluded Plaintiff from performing work at the sedentary exertional level. *Id.*

b. Plaintiff's arguments that the ALJ's determination regarding manipulative limitations is not supported by substantial evidence

In her appeal, Plaintiff argues that this determination by the ALJ that Plaintiff had no manipulative limitations was not supported by substantial evidence. (ECF 8, p. 17). Specifically, Plaintiff argues that it was reasonable for Dr. Ruiz to rely on Dr. Bacchus' April 15, 2013 examination findings because Dr. Bacchus' findings are "consistent with the record" and because the ALJ was incorrect to discount Dr. Bacchus' findings on the basis that the examination occurred after Plaintiff had returned to work.[2]

First, Plaintiff identifies no record evidence that is consistent with Dr. Bacchus' examination findings. Plaintiff does not cite or discuss any of her past medical records in this context, nor does

---

[2] New arguments raised for the first time in the reply brief are not properly before the Court.

Plaintiff dispute the ALJ's discussion of the medical records or the ALJ's analysis discrediting Dr. Ruiz's finding of manipulative limitations.

Second, Plaintiff reasons that, although she had returned to work at the time of Dr. Bacchus' April 15, 2013 examination, she was working at most an average of 15-16 hours a week, which she contends is not inconsistent with the Dr. Bacchus' examination findings. While her part-time work may not have been inconsistent with Dr. Bacchus' findings, the fact that she worked part-time does not demonstrate that she had manipulative limitations. Nor do the records Plaintiff cites support such a finding. Plaintiff cites two Reports of Contact summarizing vocational information about her past and then-current work gathered during phone interviews. (ECF 8, p. 17 (citing AR 203-206)). The first report, dated May 2, 2013, describes Plaintiff's past work as requiring that she type patient information into the computer for a total of 20-30 minutes and grasp the scanner in her hand and move it around the area being scanned on the body for 5-10 minutes at a time for up to 20 people during the day. (AR 203). The second report, dated May 7, 2013, describes Plaintiff's then-current position as doing the same work but for less hours. (AR 204). Second, Plaintiff cites the "Remarks" section of the "Work Activity Report - Employee," which does not address any hand limitations and provides that Plaintiff left her work as an ultrasound technician on October 31, 2011, because she was "not able to stand and do the work for the 35 hours weekly that I was working." (ECF 8, p. 17 (citing AR 210-211)).

Similarly, Plaintiff contends that the record does not establish that she was working beyond the capacity assessed by Dr. Ruiz when she returned to work from March 2013 to October 2013. She notes that she testified at the hearing that her work in 2013 involved training another employee, which meant that she did not have to lift and carry much and was typically sitting next to the trainee.

(AR 53-58). Notably, the ALJ found Plaintiff's hearing testimony inconsistent with her earlier description about her work activity in the May 2013 reports, with the ALJ discussing the inconsistencies in depth; Plaintiff does not contest the ALJ's findings regarding these inconsistencies. (AR 21-24).

Regardless, the ALJ's concern that Dr. Ruiz relied on Dr. Bacchus' examination findings from the time period after Plaintiff had returned to work was only one of many reasons given by the ALJ for finding that the record did not support including manipulative limitations in the RFC. The ALJ's accurate and extensive discussion of the evidence, shows that the ALJ relied primarily on the medical evidence for this determination. Substantial evidence supports the ALJ's analysis.

*3.    Unsuccessful Work Attempt*

In this first section of her brief, Plaintiff also argues that the ALJ could have found that her disability did *not* end in March 2013 upon her return to work by finding her period of employment from March 2013 to October 2013 to be a trial work period. Plaintiff contends that the Social Security Administration regulations allow disability insurance beneficiaries to test their ability to work for as many as nine months without losing benefits, citing 20 C.F.R. § 404.1592. (ECF 8, p. 18). However, § 404.1592 provides that the trial work period governs service that is not substantial gainful activity and occurs while the claimant is found to be disabled. 20 C.F.R. § 404.1592(b). The ALJ found that Plaintiff's work from March 5, 2013, to October 1, 2013, constituted substantial gainful activity, and Plaintiff does not dispute this finding. (AR 21-23).

For work at the substantial gainful activity level to be considered an "unsuccessful work attempt," the employment must discontinue or reduce below the level of substantial gainful activity after a short time (no more than six months) because of the impairment or because of the removal

of special conditions related to the impairment that are essential to the further performance of the work. 20 C.F.R. § 404.1574(c). First, Plaintiff's work from March 1, 2013, to October 1, 2013 exceeded sixth months and, therefore, cannot qualify as an unsuccessful work attempt regardless of why the work ended. *See* 20 C.F.R. § 404.1574(c)(4). Second, the ALJ found that at no point did Plaintiff allege that her work ended due to her impairments. (AR 23); *see* 20 C.F.R. § 404.1574(c)(3).

4. *Prior Claim File*

Finally, Plaintiff argues that, because the ALJ reopened the original claim, the SSA hearing office was required to request Plaintiff's claim file for the ALJ's consideration. (ECF 8, p. 18) (citing HALLEX I-2-1-13B). Plaintiff notes that the Administrative Record before the Court does not contain Plaintiff's 2012 application for disability benefits. She argues that the absence of the 2012 application "raises questions about the completeness of the record and casts further doubt on the ALJ's decision to reopen and revise the prior decision finding that [Plaintiff] was disabled." *Id*. This argument is not well taken. First, although HALLEX I-2-1-13B requires consideration of evidence in the prior claim file when, as here, the pending claim involves a possible reopening, Plaintiff has not identified any evidence that is missing related to the original application. *See* HALLEX I-2-1-13, 2014 WL 2600156 (5/26/2017). Second, Plaintiff has not shown how the absence of the original application prejudices her in the ALJ's determination. The Disability Determination Explanation, which was part of the record before the ALJ, provides that Plaintiff filed her initial claim for disability on October 29, 2012, due to degenerative disc disease and radiculopathy and that the alleged onset date was October 3, 2011. (AR 79). Also, the medical

evidence cited by Dr. Ruiz in his April 20, 2013 RFC determination is in the record and was thoroughly reviewed by the ALJ.

## B. Residual Functional Capacity for a Full Range of Sedentary Work

In the second section of her appeal, Plaintiff contends that the ALJ erred in finding that she has a residual functional capacity for the full range of sedentary work. Plaintiff reasons that, although the ALJ discussed why he did not include manipulative limitations in the RFC, "the decision does not address the failure to include multiple other well-supported limitations." (ECF 8, p. 18). Plaintiff then identifies three limitations the ALJ purportedly failed to address in the RFC determination.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 404.1545(a). The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870. "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5.

*1.      Postural and Environmental Limitations*

The first limitation Plaintiff argues the ALJ failed to address is postural and environmental limitations assessed by the reviewing agency physicians in 2013 and 2014. As set out above, in his April 20, 2013 RFC assessment, Dr. Ruiz limited Plaintiff to occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling, to never climbing ladders/ropes/scaffolds, and to avoiding concentrated exposure to wetness and vibration and moderate exposure to hazards (such as machinery and heights). (ECF 4, pp. 83-84). In his January 28, 2014 RFC assessment, Dr. Ruiz included the same postural limitations and the restriction of avoiding concentrated exposure to hazards but did not include the environmental limitations related to wetness and vibration. (AR 93-94). On May 2, 2014, Dr. Fife provided an RFC Assessment with the same postural and environmental limitations as Dr. Ruiz's January 28, 2014 assessment. (AR 105-106).

As an initial matter, the ALJ noted in his decision that Dr. Bacchus opined that Plaintiff retained the functional capacity for "light duties" with occasional bending, squatting, and overhead reaching and that Plaintiff was limited regarding "prolonged standing and walking, repetitive climbing or walking on uneven ground." (AR 28). The ALJ then explicitly found that the limitations in Dr. Bacchus' statement would not significantly erode the sedentary occupational base, citing Social Security Ruling 96-9p. (AR 28). In addition, the ALJ did not err by not specifically discussing the postural and environmental limitations found by Dr. Ruiz and Dr. Fife because Social Security Ruling 96-9p provides that occasional postural limitations and environmental limitations do not erode the sedentary occupational base. *See* SSR 96-9p, 1996 WL 374185, at *7, *9 (July 2, 1996) ("Postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base

for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work."; "In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards. The 'hazards' defined in the SCO are considered unusual in unskilled sedentary work."). The only exception is with regard to a complete inability to stoop or an inability to balance even when standing or walking on level terrain, and there is no evidence suggesting that Plaintiff has either extreme postural limitation. *See id.* at *7, *8.

Moreover, Plaintiff does not identify any evidence to support postural and environmental limitations that would erode the sedentary base. In contrast, the ALJ based the RFC for a full range of sedentary work on his detailed consideration of the entire record, including the medical evidence as well as Plaintiff's reports and testimony. As noted above, the ALJ found that the treatment records failed to establish that Plaintiff's impairments or limitations precluded her from performing sedentary work. (AR 32). The ALJ discussed the limiting effects of Plaintiff's obesity and Plaintiff's cervical and lumbar degenerative disc disease, finding that the record does not support impairment of the hands or arms or related limitations that would undermine sedentary work, particularly any limitations in overhead reaching. (AR 32-33).

In addition to discussing the medical evidence prior to March 5, 2013, the ALJ discussed the subsequent records, finding that they "fail to establish limitations that have precluded sedentary work through the present." (AR 30-33). The ALJ discussed Plaintiff's treatment with Dr. Barr from May through September 2013 as well as Dr. Bacchus' second consultative examination in December 2013, Plaintiff's primary care treatment from December 2013 through July 2015, and Plaintiff's pain

management treatment with Dr. Roth from April through December 2015, including detailed consideration of the imaging evidence and EMG findings. (AR 30-33).

Based on the lumbar MRI, ankle x-rays, and finding of hip osteoarthritis, the ALJ found that Plaintiff could not sustain standing, walking, and lifting beyond the sedentary level. (AR 33). In addition, the ALJ reasoned that limiting lifting to the sedentary level was prudent to avoid neck symptoms and to avoid exacerbating reported shoulder blade pain, even though cervical findings were less than remarkable and shoulder x-rays were normal. *Id*. The ALJ noted that hand or arm symptoms were mild or intermittent and that the EMG failed to reflect any pathology. *Id*. Then, the ALJ found that the record does not support overhead reaching limits. *Id*. The ALJ noted that the RFC for sedentary work is more restrictive than the current state agency determinations for light work and accommodates any periods of antalgic gait, lower extremity strength and sensory deficits, and any effect on standing or walking caused by ankle impairments or hip osteoarthritis. *Id*.

Plaintiff does not acknowledge or dispute the ALJ's reliance on these records to find that she could perform the full range of sedentary work, nor does Plaintiff identify records that conflict with the ALJ's findings. The ALJ did not err in finding Plaintiff could perform the full range of sedentary work in relation to postural and environmental limitations.

2.      *Inability to Sustain a 40-hour Workweek*

The second limitation Plaintiff argues the ALJ failed to consider was the "inability to sustain a 40-hour workweek." (ECF 8, p. 19). As discussed above, Dr. Ruiz did not opine that Plaintiff was unable to sustain a 40-hour workweek in the RFC, and the ALJ did not err in this regard.

*3.*    *Inability to Sit for Prolonged Periods Due to Back and Leg Pain*

The third limitation Plaintiff argues the ALJ failed to consider is Plaintiff's "back and leg pain that caused her difficulty sitting for prolonged periods." (ECF 8, p. 19). In support, Plaintiff cites a series of pages with no analysis of the information contained at those pages. The pages she cites are either her hearing testimony or her own report to the pain treatment center that her pain is aggravated by prolonged sitting. *See* (ECF 8, p. 19 (citing AR 59, 61-62, 70, 73-74) (hearing testimony); 286-300, 400, 404, 408, 412, 415, 418, 424, 428 (identical statement in the treatment notes)). First, the ALJ considered Plaintiff's own allegations and found them unsupported by the evidence; Plaintiff does not challenge the weight the ALJ gave to Plaintiff's testimony. *See* (AR 27, 33). For example, the ALJ noted that, as recently as June 2015, Plaintiff reported to her doctor that she had walked constantly while on vacation and that there was no record of any reports to corroborate Plaintiff's allegations of falling. (AR 33). Second, Plaintiff does not identify any medical evidence or findings to support her allegation that she cannot sit for prolonged periods of time. The ALJ did not err in finding that Plaintiff can perform the full range of sedentary work.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in the Plaintiff's Opening Brief [DE 8]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 30th day of July, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT